ROBERTS, APPELLEE, *v.* ROBERTS, APPELLANT.[*]

(No. 5361—Decided January 3, 1961.)

*Mr. Stephen A. Mack*, for appellee.
*Mr. George A. Meekison* and *Mr. Otto W. Hess,* for appellant.

DEEDS, J. This is an appeal on questions of law from a judgment of the Court of Common Pleas, Division of Domestic Relations.

The defendant-appellant will be referred to herein as the defendant and the plaintiff-appellee as the plaintiff, as the parties appeared in the trial court.

The plaintiff commenced an action for alimony by filing a

---

[*]Motion to certify the record overruled, May 17, 1961. For later opinion in this case, see *Roberts* v. *Roberts,* 113 Ohio App., 42.

petition in the Court of Common Pleas and securing the issuance of summons on May 11, 1956. The plaintiff alleged that defendant had been guilty of gross neglect of duty and abandonment, as plaintiff's causes for alimony.

On December 18, 1956, defendant filed an answer to plaintiff's petition, in which defendant denied plaintiff's alleged causes for alimony.

On February 18, 1959, the defendant filed cross-petition for divorce, alleging that the plaintiff had been guilty of gross neglect of duty and extreme cruelty toward defendant. As shown by the return of the sheriff, summons on the cross-petition was duly served upon the plaintiff on February 24, 1959.

Defendant has filed assignments of error as follows:

"1. The court erred in not permitting appellant to dismiss his cross-petition without prejudice before its final submission.

"2. The decree and judgment awards excessive alimony, property and other financial provisions for appellee which amounts to punitive damages against appellant.

"3. The court used different methods of valuation to determine the property awarded to appellee and the property left with appellant.

"4. The court on May 15, 1959, appointed a master commissioner to investigate and determine the assets and liabilities of the appellant and appellee and to report the same to the court. Said report was filed. Said report was not assigned for hearing and no opportunity was given to appellant to object, submit evidence contradictory to said report which was incorrect, or to contest the basis and method of the commissioner which on its face was erroneous.

"5. The judgment and decree of the Common Pleas Court is contrary to the evidence, is not supported by sufficient evidence and is against the manifest weight of the evidence."

The record discloses that there are three minor children, aged 17, 16 and 12 years, as the living issue of the marriage of the parties.

In view of the conclusion which this court has reached, it becomes unnecessary to analyze the evidence in detail and at great length in this opinion.

The principal errors to be considered are the refusal of the

court to allow defendant to dismiss the cross-petition before the case had been submitted to the court, and whether alimony was decreed in the manner as provided by Sections 3105.17 and 3105.18, Revised Code.

We quote from the record in reference to defendant's request to dismiss cross-petition and the ruling of the court upon the request as follows:

"Mr. Peppers: We rest.

"Mr. Mack: I have rebuttal yet.

"Mr. Peppers: I think I have the privilege any time before the court makes its decision to dismiss my petition without prejudice, so I would like to have that opportunity. My thoughts on it right now are to do that.

"Mr. Mack: I don't know if that could be done at this stage of the proceeding.

"Mr. Peppers: At any time before the court enters judgment, am I correct, Your Honor?

"The Court: I am not sure. After the issues are submitted, I think it is probably with prejudice. You can't go through a trial right up to the end and then if you see it is going to be against you, dismiss it.

"Mr. Peppers: Before I rest, I ask the court to dismiss defendant's cross-petition without prejudice.

"The Court: I can't dismiss it without prejudice, I'm afraid, I can dismiss it, but with prejudice. You may have an exception.

"Mr. Mack: There is a motion that you are making that it be dismissed without prejudice?

"The Court: That motion is denied. The motion to dismiss with prejudice will be granted.

"Mr. Peppers: I didn't make any motion to dismiss with prejudice.

"The Court: Then the petition stands.

"Mr. Peppers: No, I am asking the court to dismiss the petition without prejudice, period.

"The Court: All right, the motion is overruled.

"Mr. Peppers: Exception. Let the record show that I now rest my case."

The record discloses that following the foregoing discussion

and ruling of the court, disallowing defendant's request to dismiss the cross-petition, rebuttal testimony on the part of plaintiff was received and the court requested that briefs be filed by counsel for the parties before the case was finally submitted for decision.

Section 2323.05, Revised Code, provides in part as follows:

"An action may be dismissed without prejudice to a future action:

"(A) By the plaintiff, before its final submission to the jury, or to the court, when the trial is by the court;" etc.

It is our conclusion that the court was in error in refusing to allow defendant to dismiss his cross-petition. See *Glassmeyer, Admr.,* v. *Glassmeyer,* 108 Ohio App., 457, 155 N. E. (2d), 702; *State, ex rel. Strong,* v. *Cook, Clerk,* 124 Ohio St., 478, 179 N. E., 352.

With reference to the allowance of alimony, Section 3105.17, Revised Code, provides as follows:

"Either party to the marriage may file a petition for divorce or for alimony, and when filed the other may file a cross-petition for divorce or for alimony. The Court of Common Pleas may grant alimony on a petition or cross-petition for the following causes:

"(A) Adultery;

"(B) Any gross neglect of duty;

"(C) Abandonment without good cause;

"(D) A separation in consequence of ill-treatment by the adverse party;

"(E) Habitual drunkenness;

"(F) Imprisonment of the adverse party in a state or federal penal institution under sentence thereto at the time of filing the petition."

Section 3105.18, Revised Code, provides:

"The Court of Common Pleas may allow alimony as it deems reasonable to either party, having due regard to property which came to either by their marriage, the earning capacity of either and the value of real and personal estate of either, at the time of the decree.

"Such alimony may be allowed in real or personal property, or both, or by decreeing a sum of money, payable either in gross

or by installments, as the court deems equitable.''

It is the opinion of this court that by the use of the phrase ''the value of real and personal estate of either, at the time of the decree,'' the Legislature intended that the ''value'' should be the reasonable or fair market value at ''the time of the decree.''

We have the impression, from a consideration of the record before us, that little or no effort was made to determine what the reasonable or fair market value of the property awarded the parties was at the time of the decree.

The trial court appointed a capable and experienced member of the Toledo Bar as a special master commissioner to make findings of fact concerning the assets, real, personal and mixed, and all the obligations of the parties, as far as the same could be ascertained.

The report of the special master commissioner, consisting of 80 typewritten legal sheets and listing many parcels of real estate, personal property assets and obligations of the parties, has been given careful examination by the members of this court.

We consider pertinent the explanation of the special master commissioner concerning the manner in which he was required to estimate the value of the assets and properties of the parties as contained in his report to the trial court as follows:

''Your commissioner reports that pursuant to the former order of this court he conducted an investigation of the assets and liabilities of the plaintiff and defendant, and the findings as to the valuation of the said assets and determination of liabilities should be considered in light of the following:

''(1) That the parties hereto did not maintain the usual records or regular books of account, and that it was necessary to secure the information by general investigation, inspection of the auditor's records in the Lucas County Courthouse as to ownership of real estate, copy of the 1958 federal income tax return, and copy of the 1959 Ohio tangible tax return, and interrogation of the parties under oath, which information elicited from the parties was for the most part unsupported by documentary evidence.

''(2) That the value of the real estate of the parties as set

forth in the record is their cost when such information was available. Otherwise the assessed valuation for tax purposes is used except as to one parcel of property known as 5224-5240 Dorr Street, Toledo, Ohio, the first floor of which is occupied by the defendant, doing business as George H. Roberts Hardware. In this instance the valuation is that used by the National Bank of Toledo in making a real estate loan on the said property on December 20, 1955, to the defendant.

"(3) *That the true value or the market value of the various pieces of real estate set out in this report are not known to your commissioner; however, he believes that the cost value and assessed value as used by him are probably in each case less than the true or market value.*

"(4) That the values of the personal property of the parties are based upon information obtained from the parties as well as general information as to said values.

"'Your commissioner reports that the information contained herein, in many instances consists of estimates and approximations of the said parties but represents the best information available under all the circumstances." (Emphasis added.)

At the conclusion of the testimony and offering of evidence, the special master commissioner's report was received as evidence by the trial court.

We note and also consider pertinent here, certain statements by counsel and the court as same appear in the bill of exceptions as follows:

"Mr. Mack: Your Honor, with respect to this master commissioner's report, will this be an exhibit in this case?

"The Court: It will be part of the record, yes.

"Mr. Mack: I would like to make it part of the record with this stipulation, that it may be used only for the purpose of indicating what assets the parties may own, but not as to the title to the various properties. For example, the master commissioner indicates the hardware store business as belonging to the husband, which of course we deny, and of course the evidence shows that it does not. Also with respect to certain liabilities, the master has made certain assumptions which I believe are incorrect. As far as the value of this report as an exhibit, I would simply ask that it be confined to what properties are in-

volved in this proceedings, which I believe it accurately shows what property has been acquired by the parties during the course of the marriage, but as to values, I submit that that not be considered reliable.

"The Court: The court has asked counsel a number of times if they wanted to cross-examine or inquire of the master commissioner. You had that opportunity Monday and you had it again yesterday. Now we are about to wind up the case and it is a little late it seems to me. The report will be received as it is for what it purports to be; it is not a recommendation, it is not an absolute finding; it is his report. It is not conclusive, it is not binding on anybody. It is the master's idea of who owns the store,—as far as he found out, the store was owned by the husband; it doesn't mean it is necessarily so.

"Mr. Mack: If that is the situation, Your Honor, I would like to call the master commissioner herein.

"The Court: You are too late; you had chances Monday and Tuesday.

"Mr. Mack: As I understand it, the only purpose of the master commissioner here was to make an investigation as to the assets of the parties not as to ownership.

"*Mr. Peppers: Am I correct in understanding that the commissioner's report is in the nature of a deposition; it is submitted to the court and the court will give it such weight as he thinks it should have.*

"*The Court: That is exactly what I expect to give it. It will be received in the light of Mrs. Roberts' testimony and Mr. Roberts' testimony.*

"Mr. Mack: If it is received in the light of the evidence presented here, I will go along with it.

"The Court: Certainly, it has to be." (Emphasis added.)

We have read and considered all the testimony and evidence contained in the bill of exceptions, consisting of almost 200 pages and also the report of the special master commissioner, with a view to determining the "value" of the property and assets which the court decreed should be allowed the plaintiff as alimony.

We have reached the conclusion that there is no substantial evidence in the record as to the reasonable or fair market

value of the real estate which was awarded the parties, respectively, by the final decree of the trial court.

The record discloses that the trial court decreed that the plaintiff should receive 61 separate parcels of real property, also a land contract and mortgage, valued at $10,200 and $9,000, respectively, net cash and personal property in the sum of $4,394.57, all aggregating the sum of $143,650.07. From the aggregate sum of $143,650.07 the trial court ordered a deduction in the amount of $4,749.58, which sum represented a tax liability, leaving an estimated net value in the sum of $139,170.49 as an award of alimony to the plaintiff.

In addition the trial court ordered the defendant to pay child support in the amount of $35 weekly and also the sum of $15 weekly as alimony, until further order of the court. The defendant was also ordered to pay certain delinquent taxes due on property awarded the wife in the amount of $4,839.22.

The award to the defendant in property and assets was estimated by the trial court to be of the value of $212,843.19, which sum included property known as ''Dorr Street Hardware Bldg. and Apts.,'' having an estimated value of $128,000, which after deducting a mortgage in the sum of $34,987.66, left an estimated net value in that particular property in the amount of $93,012.34.

We note that additional encumbrances represented by mortgages and tax liabilities payable on properties decreed defendant, reduced the allowance to the defendant to the estimated net value of $187,668.56.

We recognize the difficulty which confronted the trial court in making an effort to determine the value of the property owned by the parties, in order that an equitable decree would be made as an allowance of alimony as required by Section 3105.18, Revised Code.

We have also noted in reading the testimony of the witnesses, that the parties were not of assistance to the trial judge in his effort to arrive at values which would aid the court in making a decree that would be just and equitable to husband and wife, respectively. The defendant in particular evidenced the attitude that it was not necessary to give information concerning the value of the properties involved in the case, notwithstanding such an attitude could work to the detriment of the defendant.

We are in accord with the finding of the trial court that the evidence was amply sufficient for an allowance of alimony to the plaintiff as provided by Sections 3105.17 and 3105.18, Revised Code.

The provisions of law applicable to the allowance of alimony have been interpreted by decisions of the Supreme Court in a number of cases. We consider the following cases, among others, as being the settled law of the state in making decrees of alimony. *Henry* v. *Henry*, 157 Ohio St., 319, 105 N. E. (2d), 406; *Dennison* v. *Dennison*, 165 Ohio St., 146, 134 N. E. (2d), 574; *Ziegler* v. *Ziegler*, 166 Ohio St., 406, 143 N. E. (2d), 589; *Goetzel* v. *Goetzel*, 169 Ohio St., 350, 159 N. E. (2d), 751; *Conner* v. *Conner*, 170 Ohio St., 85, 162 N. E. (2d), 852.

We determine that there is no substantial evidence in the record respecting the reasonable or fair market value of the property of the parties at the time of the decree, and as a consequence that the judgment of the trial court is not supported by substantial evidence.

We find defendant's assignments of error well taken and same are sustained.

We do not undertake to direct the trial court as to the method which should be pursued in arriving at the reasonable or fair market value of the properties involved in the action upon a retrial of the case.

It would seem, however, that the services of a person well informed concerning real estate values and the willing cooperation of the parties are unavoidably necessary, in order that the court may make a decree which will meet the requirements of the law and be equitable to the parties.

The judgment of the Common Pleas Court, Division of Domestic Relations, is reversed and the cause is remanded for a new trial.

*Judgment reversed.*

Fess and Smith, JJ., concur.